John ROCKA, d/b/a NICKERSON STOVES *v.*
Jim GIPSON and Nancy GIPSON, d/b/a
THE STOVE COMPANY

CA 81-180                                         625 S.W. 2d 558

Court of Appeals of Arkansas
Opinion delivered December 23, 1981

*Pollard & Cavaneau,* by: *Jerry Cavaneau,* for appellant.

*Lightle, Beebe, Raney & Bell,* by: *A. Watson Bell,* for appellees.

DONALD L. CORBIN, Judge. The trial court found that an oral contract was in existence between the parties which granted to the appellees an exclusive retail distributorship for the sale of Nickerson stoves in Searcy, Arkansas, for a period of two years from and after September 27, 1979. We affirm.

Appellant, John Rocka, is the manufacturer of Nickerson wood-burning stoves and fireplace inserts in Searcy. In the summer of 1979, he and appellees, Jim and Nancy Gipson, agreed to open a retail outlet in Searcy, as partners, to be known as "The Stove Company." In September, 1979, Rocka withdrew from the partnership. The Gipsons paid Rocka $2,058.05 for his interest. The parties agreed that the Gipsons would operate the store and Rocka would sell stoves to the Gipsons. The chancellor found, as part of the contract, that Rocka agreed not to sell Nickerson stoves from the factory and to have no other dealers in the Searcy area. Rocka contended that the Gipsons agreed not to sell competing products. The trial court held that the contract did not contain such an agreement.

Problems developed and on January 10, 1980, Rocka sent written notice to the Gipsons that he was terminating their exclusive dealership and would no longer sell to them.

On January 17, 1980, the Gipsons filed this suit, alleging an agreement not to compete and that Rocka was violating this agreement by selling from the factory. The Gipsons asked for injunctive relief and damages.

A preliminary hearing was held on February 4, 1980, which resulted in the issuance of a temporary injunction

restraining Rocka from making local retail sales from the factory.

On July 30, 1980, a petition for contempt was filed alleging Rocka had violated the injunction. Rocka denied this allegation and additionally alleged that his termination of the dealership was justified, because the agreement lacked mutuality and was void.

After a final hearing, the Chancellor found that the dealership agreement was not void for want of consideration. The injunction was made permanent and damages for factory sales were assessed at $5,600. The bulk of these sales had occurred prior to the issuance of the injunction. However, based upon four of five sales from the factory, the Judge held Rocka in contempt, levying a fine of $1,000, and imposing a 30-day jail sentence. He suspended the jail sentence and all but $250 of the fine, as it appeared that Rocka was not personally involved in the prohibited sales.

On appeal to this court, appellant argues that the chancellor's finding was against the preponderance of the evidence in that the chancellor found that the parties' agreement was supported by consideration and could not be terminated except upon reasonable notice.

Chancery cases are tried *de novo* on appeal, and we do not reverse the chancellor's findings of fact unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Odell Webb Builders* v. *Avington*, 270 Ark. 68, 603 S.W. 2d 440 (1980). Rule 52(a), Arkansas Rules of Civil Procedure.

There was consideration from the appellees to support the oral contract in that they were obligated to use their best efforts to promote the sale of appellant's stoves, pay for the stoves, take title to the stoves, store the stoves, assume the risk of loss of the stoves and keep an adequate stock of the stoves, requiring a substantial investment. In addition, there was independent consideration of $2,058.05 the Gipsons paid Rocka for the agreement.

The appellant was expected under the contract to refrain from supplying to any other dealer or agent within the exclusive territory; in this instance, the Searcy area.

Ark. Stat. Ann. § 85-2-306(2) (Add. 1961) provides:

A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

The comments to Ark. Stat. Ann. § 85-2-306 dispose of appellant's argument regarding the consideration and obligations of the parties under the contract. Comment 5 provides:

Section [2], on exclusive dealing, makes explicit the commercial rule embodied in this Act under which the parties to such contracts are held to have impliedly, even when not expressly, bound themselves to use reasonable diligence as well as good faith in their performance of the contract. Under such contracts, the exclusive agent is required, although no express commitment has been made, to use reasonable effort and due diligence in the expansion of the market or the promotion of the product, as the case may be. The principal is expected under such a contract to refrain from supplying any other dealer or agent within the exclusive territory. An exclusive dealing agreement brings into play all of the good faith aspects of the output and requirement problems of subsection (1).

Finally, the chancellor held that, considering all the surrounding circumstances, a reasonable length of time for this agreement would be two years from its inception and we find no error here.

The chancellor's findings were not clearly erroneous and we affirm.

Affirmed.

COOPER, J., concurs.